Chris R. Youtz, *Pro Hac Vice*
cyoutz@sylaw.com
Richard E. Spoonemore, *Pro Hac Vice*
rspoonemore@sylaw.com
SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246

John Burton (CA Bar No. 86029)
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
The Marine Building
128 North Fair Oaks Avenue
Pasadena, California 91103
Tel. (626) 449-8300; Fax (626) 449-4417

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ADAM CAIN, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>JPAY, INC.; METROPOLITAN COMMERCIAL BANK; and PRAXELL INC.,<br><br>               Defendants. | Case No.: 2:21-cv-07401-FLA-AGR<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION**<br><br>Hon. Fernando L. Aenlle-Rocha<br>Date: January 21, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 6B, 6th Floor |

# Table of Contents

TABLE OF CONTENTS.................................................................................. I

TABLE OF AUTHORITIES ........................................................................ III

I.   INTRODUCTION.................................................................................1

II.  FACTS .................................................................................................3

III. CAIN DID NOT AGREE TO ARBITRATE HIS CLAIMS
     AGAINST ANY DEFENDANT ...........................................................4

     A.  Defendants have the burden of proving Cain voluntarily
         entered into a contract requiring arbitration. ...............................4

     B.  There is no contract because there was no voluntary assent
         from Cain to any agreement to arbitrate.......................................6

         1.  No "offer" was made to Cain. He received a cardholder
             agreement already in force, which he could not
             negotiate or reject. ...............................................................6

         2.  Cain did not manifest mutual assent to the cardholder
             agreement by using the unrequested release card to
             retrieve his own money.......................................................11

         3.  Cain did not manifest mutual assent to the cardholder
             agreement by not using the option in that document to
             obtain a check without fees within seven days of card
             activation..............................................................................16

     C.  No contract can be created because release cards are not
         "lawful objects" as required by Cal. Civ. Code § 1550. ...........19

     D.  Defendants provided no consideration to obligate Cain to the
         terms and conditions of the cardholder agreement....................20

     E.  The Court – not an arbitrator – must decide whether a
         contract was formed that requires Cain to arbitrate his
         claims......................................................................................24

IV.  CONCLUSION ...................................................................................25

CERTIFICATE OF SERVICE ................................................................................27

# Table of Authorities

## Cases

*Anderson v. United States*,
344 F.3d 1343 (Fed. Cir. 2003) ....................................................... 10

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986) ...................................... 5

*Benedict v. State Farm Bank, FSB*,
709 S.E. 2d 314 (Ga. Ct. App. 2011)............................................................... 14

*Berkeley Cty. Sch. Dist. v. Hub Int'l. Ltd.*,
944 F.3d 225 (4th Cir. 2019) ............................................................ 23, 24

*Brown v. Stored Value Cards, Inc.*,
2016 U.S. Dist. LEXIS 23026 (D. Or. February 25, 2016)............................ 12

*Brown v. Stored Value Cards, Inc.*,
953 F.3d 567 (9th Cir. 2020) .................................................... 1, 20

*Brown v. Stored Value Cards, Inc.*,
No. 3:15-cv-01370-MO, 2021 U.S. Dist. LEXIS 238736 (D.
Or. Dec. 6, 2021) .................................................. 13, 14

*Bustamante v. Intuit, Inc.*,
141 Cal. App. 4th 199, 45 Cal. Rptr. 3d 692 (2006) ................................. 10, 11

*Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.*,
748 F. Supp. 2d 1145 (C.D. Cal. 2010) ......................................................... 21

*Citibank S. Dakota N.A. v. Santoro*,
210 Or. App. 344, 150 P.3d 429 (2006) ......................................................... 15

*Donovan v. RRL Corp.*,
26 Cal. 4th 261, 109 Cal. Rptr. 2d 807, 27 P.3d 702 (2001) ............................ 6

*Farmearl v. Storopack, Inc.*,
No. C-04-02644 RMW, 2005 U.S. Dist. LEXIS 34293 (N.D.
Cal. Sep. 12, 2005).............................................................................. 21

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ................................ 5

*Ford v. Midland Funding, LLC*,
   264 F. Supp. 3d 849 (E.D. Mich. 2017) ......................................................... 14

*Garbacz v. A.T. Kearny, Inc.*,
   No. C05-Garbacz, 2006 U.S. Dist. LEXIS 20135, 2006 WL
   870690 (N.D. Cal. Apr. 4, 2006) ........................................................................ 5

*Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres*,
   No. 4:17-CV-00289, 2019 U.S. Dist. LEXIS 209252 (M.D.
   Pa. Oct. 8, 2019) ................................................................................................ 18

*Golden Eagle Ins. Co. v. Foremost Ins. Co.,*
   20 Cal. App. 4th 1372, 25 Cal. Rptr. 2d 242 (1993) ...................................... 11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287, 130 S. Ct. 2847, 177 L.Ed.2d 567 (2010) ............................... 24

*Hoffman v. Geico Ins. Co.*,
   347 F. App'x 295 (9th Cir. 2009) ................................................................... 21

*Hohs v. Allstate Ins. Co.*,
   No. C 08-02177 JW, 2010 U.S. Dist. LEXIS 161363 (N.D.
   Cal. Feb. 10, 2010) ........................................................................................... 21

*Holl v. UPS*,
   No. 16-cv-05856-HSG, 2017 U.S. Dist. LEXIS 153317 (N.D.
   Cal. Sep. 18, 2017) ............................................................................................. 5

*Humphrey v. Stored Value Cards*,
   2019 U.S. Dist. LEXIS 3361 (N.D. Ohio Jan. 8, 2019) .................................. 20

*Humphrey v. Stored Value Cards*,
   2019 U.S. Dist. LEXIS 55915 (N.D. Ohio April 1, 2019) .............................. 20

*Jara v. Suprema Meats, Inc.,*
   121 Cal. App. 4th 1238, 18 Cal. Rptr. 3d 187 (2004) .................................... 22

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ............................................................... 5, 17, 18

*Lopez v. Charles Schwab & Co., Inc.*,
  118 Cal. App. 4th 1224, 13 Cal. Rptr. 3d 544 (2004) ...................................... 4

*McCarthy v. Providential Corp.*,
  No. C94-0627 FMS, 1994 U.S. Dist. LEXIS 10122, 1994 WL
  387852  (N.D. Cal. July 19, 1994) ..................................................................... 5

*Meyer v. Benko*,
  55 Cal. App. 3d 937, 127 Cal. Rptr. 846 (1976) ............................................ 10

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ......................................................................... 5

*Oguejiofor v. Nissan*,
  No. C-11-0544 EMC, 2011 U.S. Dist. LEXIS 99180 (N.D.
  Cal. Sep. 2, 2011)........................................................................................... 23

*Patriot Sci. Corp. v. Korodi*,
  504 F. Supp. 2d 952 (S.D. Cal. 2007)............................................................. 22

*Pope v. EZ Card & Kiosk LLC*,
  No. 15-61046-CIV, 2015 WL 5308852 (S.D. Fla. Sept. 11,
  2015) ................................................................................................................. 7

*Regan v. Stored Value Cards, Inc.*,
  85 F. Supp. 3d 1357 (N.D. Ga. 2015)......................................................... 7, 13

*Reichert v. Keefe Commissary Network LLC*,
  No. C17-5848 BHS, 2021 U.S. Dist. LEXIS 103810 (W.D.
  Wash. June 2, 2021)................................................................... 9, 13, 14, 17

*Reichert v. Rapid Invs., Inc.*,
  826 F. App'x 656 (9th Cir. 2020) ................................................................... 25

*Reyes v. JPay, Inc.*,
  No. CV 18-315-R, 2018 U.S. Dist. LEXIS 237137 (C.D. Cal.
  June 26, 2018) ................................................................................................. 16

*Sanford v. Member Works, Inc.*,
  483 F.3d 956 (9th Cir. 2007) .......................................................................... 25

*Simmons v. California Institute of Technology*,
  34 Cal. 2d 264, 209 P.2d 581 (1949)............................................................. 22

*Stinger v. Chase Bank, USA*,
    265 F. App'x 224 (5th Cir. 2008)......................................................................... 14

*Tiamson v. Equifax, Inc.*,
    No. 19-CV-08430-LHK, 2020 U.S. Dist. LEXIS 124835
    (N.D. Cal. July 14, 2020).................................................................................... 11

*Watkins v. Rapid Fin. Sols.*,
    No. 3:20-cv-00509-MMD-WGC, 2021 U.S. Dist. LEXIS
    163544 (D. Nev. Aug. 30, 2021) .................................................................. 9, 13

*Williams Fruit Co. v. Hanover Ins. Co.*,
    3 Wn. App. 276, 474 P.2d 577 (1970)............................................................. 22

*Wilson v. Huuuge, Inc.*,
    944 F.3d 1212 (9th Cir. 2019) .............................................................................. 5

*Yenko v. Crown Asset Mgmt., LLC*,
    No. A148536, 2017 Cal. App. Unpub. LEXIS 5322 (Aug. 1,
    2017) ................................................................................................................... 14

## Statutes

12 C.F.R. § 1005.10................................................................................................ 20

15 U.S.C. § 1693i(b) ........................................................................................ 19, 20

15 U.S.C. § 1693k(2) ......................................................................................... 2, 20

15 U.S.C. § 1693l-1(b) .......................................................................................... 20

Cal. Civ. Code § 1550......................................................................................... 6, 19

Cal. Civ. Code § 1605............................................................................................ 21

Cal. Civ. Code § 1667............................................................................................ 19

## Regulations

12 C.F.R. § 1005.5(b)............................................................................................ 19

# I.   INTRODUCTION

When persons are arrested and detained, detention facilities confiscate their personal property, including cash. The money is held in trust while they are in custody and returned when they are released. Inmates may also receive $200 "gate money" authorized by California law when released. Defendants contract with detention facilities to return this money through prepaid debit cards rather than in cash or by check. Defendants take fees from the money to be returned, including "service" charges assessed for simply possessing the unrequested card.

Plaintiff Adam Cain did not request a release card for the return of his trust funds or the gate money he was entitled to. He did not agree that this money could be transferred to an account controlled by Defendants that could only be accessed through their release card. But Cain had no choice; he either accepted the release card or left the jail without his money. As he left the jail with the card, fees had already begun accumulating on the money he was owed.

Cain should not have been required to obtain the money owed to him through release cards under non-negotiable terms of a cardholder "agreement" that was handed to him with the unrequested card. And under the Electronic Fund Transfer Act ("EFTA") the release cards are illegal because they are not voluntarily requested by Cain and other releasees and because the fees charged are not permissible. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 569 (9th Cir. 2020). Further, EFTA

prohibits defendants from establishing involuntary pre-paid accounts for Cain and other class members as a condition of receiving gate money, a statutorily mandated government benefit. *See*, 15 U.S.C. § 1693k(2).

Defendants contend, however, that Cain cannot challenge these cards in court because the cardholder agreement provided with the already activated release cards contains a clause requiring arbitration of disputes. They argue this provision prevents Cain from serving as class representative for thousands of persons who also lost money through these fee-laden release cards.

Defendants' motion to compel arbitration under that clause should be denied. Defendants cannot prove – as they must to compel arbitration – that Cain voluntarily assented to the terms of any cardholder agreement, including any arbitration provision. Their motion fails to address a key, undisputed fact:  Cain had to accept the release card to receive gate money and his own funds back – he had no choice. Unlike cases Defendants cite where consumers requested and opened accounts to obtain credit, Cain did not request a release card to return his money. And credit card customers have the option to take their loan requests to other vendors; Cain and other releasees had no choice but to accept release cards and do business with Defendants if they wanted their money back. They should not be forced to acquiesce to terms Defendants chose to include in documents accompanying the unrequested release cards, including its arbitration requirement.

## II.   FACTS

The pertinent facts are simple. Plaintiff Adam Cain was released from custody to parole on September 18, 2021. Declaration of Adam Cain ("Cain Decl.") ¶ 3. He had $13.50 in his prison trust account that was owed to him and was entitled to an allowance of $200 from the state of California (also known as "gate money"). *Id.* ¶10. Without Cain's permission or knowledge, those funds were transferred to an account established with defendant Metropolitan Bank to fund a prepaid debit card ("release card") that would be used to return this money to him. *Id.* ¶ 12. Four days prior to Cain's release, that release card was activated, which started the time running for assessment of a monthly service fee, which would be charged for simply possessing the card whether it was used or not. Cain Decl. ¶ 5; Ex. A, p.1.

Cain did not know that his money was sent to a bank he knew nothing about to establish an account controlled by Defendants who could use the funds to pay themselves fees for returning money to Cain. Cain Decl. ¶ 12. At no time did Cain give permission for his money to be sent to an account controlled by others or for these funds to be transferred to an account managed by Defendants, and he did not request that his money be returned on a release card. *Id.*

When Cain was released on September 18, he was surprised to receive the money owed him through a release card instead of a check or cash. *Id.* ¶4. However, he had no option but to accept the release card with its accompanying cardholder

"agreement" if he wanted his money. ¶¶ 2, 6, 12; Decl. of Santiago Briones, ECF No. 52-3 at 3, ¶¶ 3-4. The release form confirmed the card was already activated and that he was already subject to its fees and conditions. ECF No. 52-3 at 13.

Cain made personal purchases with the card, with his last purchase being a meal on September 30. The remaining $4.87 was taken by two failed transaction fees and the monthly service fee.[1] Cain Decl. ¶ 10.

### III.  CAIN DID NOT AGREE TO ARBITRATE HIS CLAIMS AGAINST ANY DEFENDANT

**A.  Defendants have the burden of proving Cain voluntarily entered into a contract requiring arbitration.**

Defendants devote much of their memorandum to discussing the breadth, policy, and application of the Federal Arbitration Act. However, "the FAA does not apply until the existence of an enforceable arbitration agreement is established." *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1229, 13 Cal. Rptr. 3d 544, 548 (2004). "There is no public policy favoring arbitration of disputes that the parties have not agreed to arbitrate." *Id.*

---

[1] The summary of transactions provided by Defendants shows many transactions were attempted using Cain's release card information after his final purchase. None of those apparent attempts to purchase products or services were made by him. Cain Decl. ¶ 11. All those attempts, which continued over several months, were rejected because there was no money in the account. Defendants do not show they provided any notice to Cain regarding those attempts to use his card information.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986). Courts determine "whether a valid agreement to arbitrate exists." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). "[T]he party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "The party opposing the motion on the ground that there is no binding agreement to arbitrate should receive 'the benefit of all reasonable doubts and inferences that may arise.'" *Garbacz v. A.T. Kearny, Inc.*, No. C05-Garbacz, 2006 U.S. Dist. LEXIS 20135, 2006 WL 870690 at *2 (N.D. Cal. Apr. 4, 2006) (quoting *McCarthy v. Providential Corp.*, No. C94-0627 FMS, 1994 U.S. Dist. LEXIS 10122, 1994 WL 387852 at *2 (N.D. Cal. July 19, 1994)). *Holl v. UPS*, No. 16-cv-05856-HSG, 2017 U.S. Dist. LEXIS 153317 at *7 (N.D. Cal. Sep. 18, 2017).

To determine whether an agreement exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)).

Defendants acknowledge "California law applies to issues surrounding contract formation." Def. Br. at 13. Cain agrees.

By statute, in California it "is essential to the existence of a contract that there should be: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) A sufficient cause or consideration." Cal. Civ. Code § 1550. Although Cain was capable of entering into a contract, if he had been asked to do so, (1) he did not assent to the contract that was forced on him for the return of his own money, (2) the release card and its terms and conditions he was required to accept were illegal, and (3) the claimed agreement was not supported by consideration. A contract did not exist between Cain and any Defendant that requires him to arbitrate his claims arising from the illegal release cards.

**B.**   **There is no contract because there was no voluntary assent from Cain to any agreement to arbitrate.**

    **1.**   **No "offer" was made to Cain. He received a cardholder agreement already in force, which he could not negotiate or reject.**

While Defendants characterize the transfer of the release card and the cardholder agreement to Cain as an "offer," "[t]he objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001).

How could being handed an activated release card as the only way to obtain money owed to you be viewed as an offer? Cain arrived to retrieve money that he was owed, handed a release card with paperwork, and told this is how his money would be returned. The documents handed to him confirmed that he was already subject to fees and other burdens that he could not dispute. He had no opportunity, or right, to negotiate any of those conditions or even to reject the card and leave the facility with either cash or a check. Neither Cain nor any other reasonable person would consider this forced transaction as an offer.

It is that lack of choice that distinguishes this case from *Pope v. EZ Card & Kiosk LLC*, No. 15-61046-CIV, 2015 WL 5308852 (S.D. Fla. Sept. 11, 2015), cited by Defendants. Before he was released, the plaintiff in *Pope* could choose how his money was returned. A form available to detainees allowed them to choose whether they wanted their money returned through a prepaid debit card (while identifying specific fees associated with that card) or with a check when they were released. *Pope* at *7. The plaintiff in *Pope* had a choice that Cain did not have. It was for this reason that the court in *Pope* distinguished *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357 (N.D. Ga. 2015), a release card case where a motion to compel arbitration was denied; the plaintiff in *Regan* "was given a prepaid card and was not given an opportunity to reject the card." *Pope* at *10.

The release statement provided to Cain also seemed to provide a choice to have gate money provided by check rather than debit card:



However, the statement was already filled in to select the debit card option. Cain could not change this selection; he was told the money could be received only by debit card. Cain Decl. ¶ 6. In fact, without his permission or knowledge, the release card had already been activated four days before it was handed to him.

Cain's acceptance was preordained when he received the card. The release statement affirmed that the clock had already begun for the imposition of service fees (when activation of the card occurred, four days earlier) in accordance with the cardholder terms.

The cardholder agreement handed to Cain declares he is bound by its terms and conditions by "accepting" the card when it is handed to him.[2] A nearly identical provision[3] in a cardholder agreement provided to releasees from a Nevada prison

_____

[2] Defendants' cardholder agreement states: "By accepting and/or using this Card, you agree to be bound by the terms and conditions contained in this Agreement."

[3] "[Y]our acceptance and/or use of the Card will be evidence of your agreement." *Watkins* at *10 (from cardholder agreement used by Rapid Financial).

confirmed "Plaintiff had 'accepted' the Agreement the moment he received the card tri-folded with the Agreement." *Watkins v. Rapid Fin. Sols.*, No. 3:20-cv-00509-MMD-WGC, 2021 U.S. Dist. LEXIS 163544, *11-12 (D. Nev. Aug. 30, 2021). *See also Reichert v. Keefe Commissary Network LLC,* No. C17-5848 BHS, 2021 U.S. Dist. LEXIS 103810 at *16 (W.D. Wash. June 2, 2021) (noting phrase "[b]y accepting or using this card, you agree" intended to bind plaintiff to cardholder agreement before leaving the jail).

Defendants need the cardholder agreement to say that Cain was bound to its terms when he accepted the release card because it was already in effect when handed to him. This is further affirmed by the second page of the release statement, which identifies fees that he will be charged, emphasizing that the service fee begins from when the card is activated, without any prior assent or use of the card:

Schedule of fees associated with debit card. (Fees imposed by debit card contractor and third-party vendors.)

| FEE SCHEDULE | |
| --- | --- |
| Automated Teller Machine (ATM) (Affiliated with debit card contractor) | Free |
| ATM Machine (Not affiliated with debit card contractor)* | Third-party fees may apply, PER TRANSACTION |
| Point of Sale (POS) Transaction | Third-party fees may apply, PER TRANSACTION |
| *Third-party vendors and merchants may charge a fee for Automated Teller Machines (ATM) and Point-of-Sale (POS) transactions. *Such charges are not controlled by contractor. | |
| DECLINED ATM Withdrawal or POS transaction | $ 1.00 PER DECLINED TRANSACTION |
| Monthly Service Fee** | $ 3.00 |
| **Monthly service fee charged 30 days after _activation_ and for each month the card carries a balance. SEE CARD ACTIVATION DATE ON FRONT. To avoid this fee, remove all funds from the card within 30 days of the activation date. | |
| Replace Card Fee (PER OCCURRENCE) | $ 5.00 |
| Close Card Fee (Close card fee only charged if the debit card holder requests the remaining balance on the card to be paid by check.) | $ 9.95 |

And if the release card is never used, the monthly service fee levied by the cardholder agreement still takes money from the account from the date of activation until all funds are gone. Cain Decl, Ex. B ¶ 3 (fees assessed "so long as there is a remaining balance in your card account").

Even if issuing an unrequested, mandatory release card to return Cain's money could somehow be deemed an "offer," a contract cannot be created without mutual assent to that offer. "As a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). Under California law:

> Contract formation requires mutual consent, which cannot exist unless the parties "agree upon the same thing in the same sense." (Civ. Code, § 1580; see also §§ 1550, 1565.) "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811.)

*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006).

Mutual assent "is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Meyer v. Benko*, 55 Cal. App. 3d 937, 942–943 (1976). Mutual assent did not occur when Cain simply left the facility with the release card without any affirmation of the terms of the cardholder agreement:

> Under California law, silence in the face of an offer to contract is generally insufficient to form a contract. Specifically, California Civil Code section 1550 provides that consent is an "essential element of the

> existence of a contract." Cal. Civ. Code § 1550. California Civil Code
> section 1565 further specifies that "consent of the parties must be …
> communicated by each to the other." Id. § 1565. Thus, courts
> interpreting these provisions have held that "[a]n essential element of
> any contract is the consent of the parties, or mutual assent."

*Tiamson v. Equifax, Inc.*, No. 19-CV-08430-LHK, 2020 U.S. Dist. LEXIS 124835 at *11-12 (N.D. Cal. July 14, 2020). *See, e.g., Golden Eagle Ins. Co. v. Foremost Ins. Co.,* 20 Cal. App. 4th 1372, 25 Cal. Rptr. 2d 242 (1993) ("As a general rule, silence or inaction does not constitute acceptance of an offer.")

No reasonable person would believe that Cain objectively manifested assent to the cardholder agreement when he accepted an unrequested release card and cardholder agreement as the only means of accessing the money owed to him. There is no evidence establishing "manifestation of assent to the 'same thing' by both parties." *Bustamante,* 141 Cal. App. 4th at 208.

**2.     Cain did not manifest mutual assent to the cardholder agreement by using the unrequested release card to retrieve his own money.**

Ignoring the provision in their own cardholder agreement that it is effective when the release card is accepted by Cain, Defendants claim he manifested assent to the cardholder agreement by using the card to retrieve his own money. But neither Defendants nor Cain treated "use of the card" as a marker for mutual assent. Defendants begin assessing service fees as though the cardholder terms were immediately enforceable when the card is issued; they do not wait for assent or use.

"Use" of the card is irrelevant. Service fees levied under the terms of the contract are taken until the money runs out even if the card is never used. In addition, from the time the release card was activated, the cardholder agreement controlled whether Defendants would mail Cain a check for his money without charging him a $9.95 fee. That document required Cain to submit this request within seven days of card activation, which occurred on the Monday before Cain received his card on Friday, September 18. He only had three days remaining (two of them non-business days) to submit his request. Again, the cardholder agreement terms were imposed on him before he could even use his card.

Also, a reasonable person would not see Cain's withdrawal of his own money as manifesting assent to a contract with arbitration terms, but, rather, as something expected when handed a card instead of a check or cash as the means to retrieve the funds. Cain had no choice but to accept the release card to get his money back; this manifests an involuntary arrangement, not one created with mutual assent. As the court in *Brown v. Stored Value Cards, Inc*., 2016 U.S. Dist. LEXIS 23026, *10 (D. Or. February 25, 2016) recognized, any "choice" to use a release card was not a choice at all: "Ms. Brown *had* to take the card and *had* to work through the Defendants' system in order to get her money back." (emphasis in original).

*Brown* and most other courts have refused to order arbitration of claims brought by releasees who were required to accept release cards for the return of their

money and used the cards to access their funds. *See Reichert v. Keefe Commissary Network LLC*, No. C17-5848 BHS, 2021 U.S. Dist. LEXIS 103810 (W.D. Wash. June 2, 2021); *Watkins v. Rapid Fin. Sols.,* No. 3:20-cv-00509-MMD-WGC, 2021 U.S. Dist. LEXIS 163544 (D. Nev. Aug. 30, 2021) (plaintiff "did not mutually assent to the Cardholder Agreement"); and *Brown v. Stored Value Cards, Inc*., No. 3:15-cv-01370-MO, 2021 U.S. Dist. LEXIS 238736 (D. Or. Dec. 6, 2021) ("*Brown II*").

*Regan* held that receiving and using an unrequested prepaid debit card from Numi was not binding consent to the arbitration provision in the cardholder agreement that came with the card. "Defendants' cited authority is even less persuasive due to another distinguishing factor:  Plaintiff received the Card while he was being discharged *from jail, i.e. from a condition of absence of liberty of choice which Defendant reasonably could have anticipated*." *Regan*, 85 F. Supp. 3d at 1364 (emphasis in original).

Class members in *Reichert* also had no choice but to accept a release card to return money held for them while in detention. An arbitration provision was included in the cardholder agreement accompanying those cards, which Rapid Financial sought to enforce against class representative Gary Moyer because he obtained money from the release card. Its motion to compel was denied:

> Moyer, as far as he knew, was simply getting his money back when he
> left jail. A reasonable person in Moyer's position could not be expected
> to understand that he could not leave jail with his own money, a right
> protected by Washington law, without being bound to a contract with

an unknown bank (subject to potentially illegal fees) and renouncing his right to sue or bring a class action. "Accepting" one's own money, in the only form available, cannot be construed as assent to contract. To decide otherwise would violate the offeree's right to make no reply to an offer.

*Reichert,* 2021 U.S. Dist. LEXIS 103810 at *19.

*Brown II* addressed facts also pertinent here: "Class members had no choice but to receive the money confiscated from them on the cards, the cards were activated before being handed to class members, and card activation started the accumulation of fees that would continue until the balance on the card was depleted." *Brown II* at *4. That court concluded "there is no valid agreement to arbitrate because there was no mutual assent," rejecting arguments that an agreement to arbitrate arose because class members accepted the release cards, did not opt out of arbitration, and used the card to access their money. *Id.* at 3.

Defendants cite four cases involving credit card accounts[4] as support for their theory that Cain is bound to the cardholder agreement and its arbitration clause because he retrieved his own money from a release card. The customers in those cases sought agreements to borrow money through credit cards to make purchases,

_____

[4] Those cases are: *Stinger v. Chase Bank, USA*, 265 F. App'x 224, 225 (5th Cir. 2008); *Yenko v. Crown Asset Mgmt., LLC*, No. A148536, 2017 Cal. App. Unpub. LEXIS 5322 at *1-2 (Aug. 1, 2017) (unpublished decision); *Ford v. Midland Funding, LLC*, 264 F. Supp. 3d 849, 855 (E.D. Mich. 2017); *Benedict v. State Farm Bank, FSB*, 709 S.E. 2d 314, 319 (Ga. Ct. App. 2011).

filled out applications to open accounts, received and used credit cards, but later argued that they were not subject to arbitration because they had not received a copy of the account agreement with an arbitration provision. Because the plaintiffs in those cases were found to have accepted the terms of their account agreements when they used their credit cards, Defendants argue that Cain should be similarly obligated to the cardholder agreement he received with his unrequested release card.

When agreements are sought to borrow money through credit cards, it can be expected that contracts will result with terms and conditions governing use of the cards and repayment of the loans, which could include an arbitration provision. Here, however, Cain did not seek an agreement for a release card, did not request credit or services from Defendants, and, unlike credit card applicants, had no choice but to accept Defendants' release card if he wanted his own money returned.

It was for those reasons the Oregon District Court in *Brown* rejected the argument Defendants make here. The *Brown* defendants cited *Citibank S. Dakota N.A. v. Santoro*, 210 Or. App. 344, 349, 150 P.3d 429 (2006), which rejected a cardholder's argument that he was not bound to a cardholder agreement he did not sign, stating, "conduct in using [a] card constitute[s] mutual assent to the terms of the credit card agreement." The *Brown* court, however, recognized this holding is inapplicable to release cards because "Oregon has never found an agreement where the card holder did not apply for the card." *Brown* at *7. Plaintiff Brown, like Cain

here, did not request a release card to receive back her own money, and the fact that she used her release card did not bind her to the cardholder agreement.

Defendants principally rely on Judge Real's decision in *Reyes v. JPay, Inc.*, No. CV 18-315-R, 2018 U.S. Dist. LEXIS 237137 (C.D. Cal. June 26, 2018). The plaintiff in *Reyes* declared he did not receive a cardholder agreement with his release card, arguing he could not be bound by an agreement he knew nothing about. That court, however, was persuaded by declarations from prison officials that cardholder agreements were routinely provided in envelopes with the cards to releasees as they left the prison, concluding the "weight of the evidence" showed the plaintiff likely received the cardholder agreement and, thus, was bound to its arbitration provision when he used the card. *Reyes* at *5. There is no analysis regarding whether the plaintiff could choose how his money would be returned, whether the card was activated and the terms of the cardholder agreement in effect when the card was received, or whether consideration was present. In short, *Reyes* did not address issues that are determinative here. If it did, then the case is incorrectly decided.

### 3. Cain did not manifest mutual assent to the cardholder agreement by not using the option in that document to obtain a check without fees within seven days of card activation.

Defendants argue they provided options for Cain to avoid paying fees, including the option to obtain a check if requested within seven days of card activation. They fault Cain because he supposedly "declined to exercise his

contractual rights to receive a check or otherwise cancel the account," thus showing his mutual assent to the cardholder agreement.[5] Def. Br. at 16. That is also why Defendants claim "Cain's allegations materially differ from those at issue in *Reichert*. Here, Cain plainly had the ability to receive a check with his funds, but he declined that option. Instead, he repeatedly used the Card."

That distinction is not accurate. The defendants in *Reichert* argued, as do Defendants here, that its plaintiff accepted the cardholder agreement because he did not call their service center to close the account and request a check without charge; instead, he used the card to retrieve money. The court held that the plaintiff was not required to read through the cardholder agreement to discover how else he could get his money returned, and that the plaintiff did not agree to the cardholder agreement by not exercising that option. *Reichert* at *8.

The availability of that option does not determine whether a contract was created requiring arbitration. Placing this option in the cardholder agreement does not transform an involuntary contract into one with mutual assent. *See Knutson,* 771 F.3d at 566.

---

[5] The fact that Defendants claim the option for a check was a "contractual right" and that Cain could "cancel the account" further shows that they considered the agreement to be in effect without positive assent from Cain and required him to take affirmative steps to bail out of the contract.

In *Knutson*, a plaintiff purchased a truck, which came with a 90-day trial subscription to Sirius XM satellite radio. After the trial subscription began, the plaintiff received a Sirius XM customer agreement, which included an arbitration provision. That document said the customer would be obligated unless Sirius XM received notice of cancellation. The purchaser did not cancel the trial subscription. He later sued Sirius XM with claims regarding unsolicited marketing calls. Sirius XM attempted to force those claims into arbitration, claiming that the plaintiff agreed to arbitration by not canceling the subscription. The trial court granted the motion.

The Ninth Circuit reversed, holding that there was no valid arbitration agreement between the plaintiff and Sirius XM. The court rejected Sirius XM's argument that the plaintiff affirmed his "acceptance" of the agreement by not canceling and continuing to use the service. The court held there was no mutual assent because the plaintiff did not request the service and was under no obligation to read the unsolicited materials sent to him by Sirius XM. *Id*.

Similarly, Cain was not obligated to read the cardholder agreement to determine what options might be available. He had the right to reject the "offer" by doing nothing and without reading anything. *See Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres*, No. 4:17-CV-00289, 2019 U.S. Dist. LEXIS 209252 at *3-4 (M.D. Pa. Oct. 8, 2019) (vacating arbitration award because there

was no agreement to arbitrate, holding a party's failure to respond to a purported contract with an arbitration clause did not create a contract because "[m]erely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting").

Availability of other paths that could possibly be followed to avoid fees does not determine whether there was a binding agreement created when the release card was handed to Cain. Fees are but one part of a cardholder agreement that has 33 numbered paragraphs of terms, plus 7 subparts in the arbitration provision alone, and more than 9,000 words that Cain supposedly agreed to by "accepting" the card. There still must be mutual assent before a contract is made and arbitration is mandated. Offering clues to avoid fees does not fulfill that requirement.

## C. No contract can be created because release cards are not "lawful objects" as required by Cal. Civ. Code § 1550.

The subject of a contract must be a "lawful object." Cal. Civ. Code § 1550. Defendants claim release cards meet that criterion. They are wrong. "That is not lawful which is contrary to an express provision of law." Cal. Civ. Code § 1667. Defendants' release cards violate at least three sections of the Electronic Fund Transfer Act ("EFTA").

First, EFTA does not permit the issuance of unrequested prepaid debit cards that are activated before transferred to the recipient. *See* 15 U.S.C. § 1693i(b). *See also* 12 C.F.R. § 1005.5(b) (same). A card issued in violation of those provisions is

illegal. *Humphrey v. Stored Value Cards*, 2019 U.S. Dist. LEXIS 3361 at *5 (N.D. Ohio Jan. 8, 2019) ("This provision [15 U.S.C. § 1963i] stops the issuance of unsolicited but activated debit cards."). *See also Humphrey v. Stored Value Cards*, 2019 U.S. Dist. LEXIS 55915 at *4 (N.D. Ohio April 1, 2019) (in subsequent order, summary judgment entered for the class holding that activated Cards provided involuntarily to prison releasees violate 15 U.S.C. § 1693i(b) of the EFTA). *See also*, *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 572 (9th Cir. 2020).

Second, the service fees and other charges made by Defendants are illegal. "Section 1693l-1 prohibits charging service fees to "general-use prepaid cards" unless the card has not been used for 12 months and other requirements have been met. *Id.,* § 1693l-1(b)." *Brown*, 953 F.3d at 572.

Third, EFTA prohibits Defendants from establishing involuntary pre-paid accounts for Cain and other class members as a condition of receiving gate money, a statutorily mandated government benefit. 15 U.S.C. § 1693k(2); 12 C.F.R. § 1005.10 ("No financial institution or other person may require a consumer to establish an account for receipt of electronic fund transfers with a particular institution as a condition of employment or receipt of a government benefit.")

**D.    Defendants provided no consideration to obligate Cain to the terms and conditions of the cardholder agreement.**

The principal purpose of the release card, and the presumed consideration for the cardholder agreement, is to return money legally required to be paid to Cain. But

to qualify as proper consideration, a benefit must be one to which Cain "is not lawfully entitled." Cal. Civ. Code § 1605. The funds loaded on the card were his own money held in trust for him and his gate money, a statutorily mandated payment. He was lawfully entitled to this money, and "it is well-established that a promise to conform to the law lacks consideration." *Farmearl v. Storopack, Inc.*, No. C-04-02644 RMW, 2005 U.S. Dist. LEXIS 34293 at *29-30 (N.D. Cal. Sep. 12, 2005). *See also Hohs v. Allstate Ins. Co.*, No. C 08-02177 JW, 2010 U.S. Dist. LEXIS 161363 at *13 (N.D. Cal. Feb. 10, 2010) (offer to perform a pre-existing duty cannot serve as consideration); *Hoffman v. Geico Ins. Co*., 347 F. App'x 295, 296 (9th Cir. 2009) (a release obtained by GEICO from plaintiff for $100,000 lacked consideration since GEICO was already obligated to make that payment).

Defendants argue that other, unrequested features of the card – that it could be used at an ATM or for purchases over the Internet – provide the consideration necessary to support the fees and other terms of the cardholder agreement, including the arbitration requirement. But "[t]o constitute consideration sufficient to support a contract, it is not sufficient that a party simply confer a benefit or provide a service to the other party; rather, the performance of that service must be *bargained for*." *Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.*, 748 F. Supp. 2d 1145, 1169 (C.D. Cal. 2010) (emphasis in original). "Importantly, 'the consideration for a promise must be an act or a return promise, *bargained for and given in*

*exchange for the promise.*'" *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 960 (S.D. Cal. 2007) (emphasis in original, quoting *Simmons v. California Institute of Technology*, 34 Cal. 2d 264, 272 (1949)).

"An action is not bargained for and cannot constitute consideration for a promise if it was wholly unsolicited by the promisor." *Id*.; *Jara v. Suprema Meats, Inc.,* 121 Cal. App. 4th 1238, 1249 (2004) ("California courts have repeatedly refused to enforce gratuitous promises, even if reduced to writing in the form of an agreement.") *See, Williams Fruit Co. v. Hanover Ins. Co.,* 3 Wn. App. 276, 281, 474 P.2d 577, 581 (1970) (if the supposed consideration was never discussed, it was not "bargained for").

Cain did not request the release card and its cardholder agreement from Defendants. Whatever promises or supposed benefits that may be available in the cardholder agreement were all unsolicited. There was no bargaining; nor could there be since Cain could not negotiate or even reject the cardholder agreement if he wanted to leave prison with his money. There is no consideration to bind Cain to the terms of the cardholder agreement.

Defendants then suggest that the arbitration provision can be treated separately from the rest of the cardholder agreement, and that consideration is found because there is a mutual exchange of promises where each party agrees to let the other demand arbitration.

First, Defendants, do not explain why the arbitration provision should be treated as a contract independent of the cardholder agreement. It is part and parcel of that document, and its survival depends on whether the cardholder agreement as a whole is a binding contract:

> We assess the Brokerage Service Agreements and the Arbitration Clauses together because, in these circumstances, the latter could not exist without the former. That is — although an arbitration clause is generally "severable from the contract in which it appears" — if the contract in which the arbitration clause "appears" was never formed, then the arbitration clause therein does not exist. *See Granite Rock Co.*, 561 U.S. at 299 (explaining severability principle and that such principle does not apply where party challenges formation of contract containing arbitration clause).

*Berkeley Cty. Sch. Dist. v. Hub Int'l. Ltd.*, 944 F.3d 225, 238 n.14 (4th Cir. 2019).

Second, there is no evidence that the mutual promises within the arbitration provision were bargained-for consideration. The plaintiff in *Oguejiofor v. Nissan*, No. C-11-0544 EMC, 2011 U.S. Dist. LEXIS 99180, at *1 (N.D. Cal. Sep. 2, 2011), cited by Defendants, negotiated and signed three arbitration agreements. Two of those arbitration agreements were supported by offers of employment; the third was not, but the court found that the exchange of promises between the plaintiff and the defendant, which resulted in a signed contract, were adequate consideration. There, unlike here, consideration was bargained for and agreed to when the parties mutually assented by signing contracts.

**E.     The Court – not an arbitrator – must decide whether a contract was formed that requires Cain to arbitrate his claims.**

Arbitrators cannot make decisions for parties who do not agree that they may do so: "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296, 130 S. Ct. 2847, 2856, 177 L.Ed.2d 567, 577 (2010). Nonetheless, Defendants claim that an arbitrator, rather than this Court, should decide whether the parties agreed to use an arbitrator in the first place.[6] They ignore Supreme Court and Ninth Circuit authority holding that questions regarding whether a contract to arbitrate was formed or exists are answered by a court, not an arbitrator:

> It is well settled … that [1] whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. It is similarly well settled that [2] where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.

*Granite Rock Co.*, 561 U.S. at 296 (cleaned up). *See also*, *Berkeley Cty. Sch. Dist.*, 944 F.3d at 234 ("Section 4 [of the Federal Arbitration Act] thus requires that the district court — rather than an arbitrator — decide whether the parties have formed an agreement to arbitrate.) And in *Reichert*, a release card case whose cardholder

---

[6] Defendants state: "An arbitrator must decide Cain's anticipated challenge to contract formation." Def. Br. at 18.

agreement also had a delegation clause, the Ninth Circuit required the district court to decide issues of contract formation: "Notwithstanding any delegation clause in the Agreement, 'challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration.'" *Reichert v. Rapid Invs., Inc.*, 826 F. App'x 656, 658 (9th Cir. 2020) (emphasis in original, quoting *Sanford v. Member Works, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007)).

This Court decides whether an agreement was formed between Cain and Defendants requiring arbitration. As shown above, no contract was formed.

## IV.  CONCLUSION

For the reasons provided above, the Defendants' Joint Motion to Compel Arbitration should be denied.

DATED:  December 17, 2021.

> SIRIANNI YOUTZ
> SPOONEMORE HAMBURGER PLLC
>
>   */s/ Chris R. Youtz*
> Chris R. Youtz, *Pro Hac Vice*
> cyoutz@sylaw.com
> Richard E. Spoonemore, *Pro Hac Vice*
> rspoonemore@sylaw.com
> 3101 Western Avenue, Suite 350
> Seattle, WA 98121
> Tel. (206) 223-0303; Fax (206) 223-0246
>
> THE LAW OFFICES OF JOHN BURTON
> John Burton (CA Bar No. 86029)
> jb@johnburtonlaw.com
> The Marine Building
> 128 North Fair Oaks Avenue

Pasadena, California 91103
Tel. (626) 449-8300; Fax (626) 449-4417

*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify under penalty of perjury that on December 17, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

                                   _/s/ Chris R. Youtz_
                                     Chris R. Youtz, _Pro Hac Vice_
                                     cyoutz@sylaw.com
                                     _Attorneys for Plaintiff_