UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM CAIN, individually and on behalf of all others similarly situated<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JPAY, INC., et al.,<br><br>　　　　　　　Defendants. | Case No. 2:21-cv-07401-FLA (AGRx)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION OF ALL CLAIMS [DKT. 52]** |

## RULING

Before the court is Defendants JPay LLC (f/k/a JPay, Inc.) ("JPay"), Metropolitan Commercial Bank ("Metropolitan"), and Praxell Inc.'s ("Praxell") (collectively, "Defendants") Motion to Compel Arbitration of All Claims ("Motion"). Dkt. 52 ("Mot.") Plaintiff Adam Cain ("Plaintiff" or "Cain") opposes the Motion. Dkt. 54 ("Opp'n"). On January 18, 2022, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for January 21, 2022. Dkt. 64; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons stated herein, the court DENIES Defendants' Motion.

///

## BACKGROUND

On September 15, 2021, Plaintiff, individually and behalf of all others similarly situated, filed a putative class action complaint against Defendants alleging: (1) Wrongful Taking Under the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983; (2) violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693; (3) Conversion; (4) Unjust Enrichment; and (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. *See generally*, Compl.

Plaintiff was incarcerated at the Chuckawalla Valley State Prison ("CVSP"). *Id.* ¶ 13. Consistent with CVSP practice, after Plaintiff was arrested, any cash he had was confiscated and held in a trust until his release. *Id.* ¶¶ 6, 9, 17. Historically, when individuals were released from custody, money was returned in the form of cash or check. *Id.* ¶ 18. However, beginning in 2014, the California Department of Corrections and Rehabilitation ("CDCR") contracted with JPay to provide prepaid debit cards to individuals released from California's prison facilities. *Id.* ¶¶ 14, 19. At the time of his release, on September 18, 2020, Plaintiff was issued $213.50 on a prepaid debit card (the "Card"), which consisted of the gate money he was entitled to receive. *Id.* ¶ 10. Plaintiff did not give permission to use his money to fund the Card and was not given any alternative method to receive his money back other than accepting the prepaid debit card. *Id.* ¶ 21. As of October 2020, Plaintiff had $4.87 remaining on the prepaid debit card, which was depleted by charges for fees, including a monthly service fee. *Id.* ¶ 26.

Praxell administers and markets the card release program and provides customer service for institutions using prepaid debit cards. *Id.* ¶ 15. MCB partners with JPay and Praxell to provide banking services for the card release program. *Id.* ¶ 16. The prepaid debit cards are governed by a Cardholder Agreement (the "Cardholder Agreement") which is supposed to be provided to individuals when they receive a release card. *Id.* ¶ 22. According to Plaintiff, he and other class members did not receive copies of the cardholder terms and conditions until after the Card was

2

issued, if they received them at all. *Id.* ¶ 11. Nor did Plaintiff and other class members have the opportunity to negotiate the terms and conditions of the Cardholder Agreement or reject the Cardholder Agreement if they wanted to receive the funds. *Id.* ¶ 23.

## **DISCUSSION**

### I.   **Legal Standard**

Section 2 of the Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms." *Id.* (internal citations omitted). Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (internal quotation marks omitted).

"It is well established that where the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (internal quotation marks omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Three Valleys Mun. Water Dist. v. E. F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991) (internal quotation marks omitted). "But arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *Id.* (internal quotation marks omitted).

///

1  "A contract to arbitrate will not be inferred absent a 'clear agreement.'" *Davis*
2  *v. Nordstrom, Inc.* 755 F.3d 1089, 1092 (9th Cir. 2014). "When determining whether
3  a valid contract to arbitrate exists, we apply ordinary state law principles that govern
4  contract formation." *Id.* at 1093. "In California, a 'clear agreement' to arbitrate may
5  be either express or implied in fact." *Id.* "[A]s with any contract, the parties'
6  intentions control, but those intentions are generously construed as to issues of
7  arbitrability." *Three Valleys*, 925 F.2d at 1139 (internal quotation marks omitted).

## II. Analysis

Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise." *Id.* (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)). A challenge to an "[a]greement as a whole for lack of acceptance and consideration—elements of contract *formation*—is … a matter to be determined by a court." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022).

### A. The Existence of an Enforceable Agreement

Under California law, the essential elements of a contact include: (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) "[a] lawful object; and," (4) "[a] sufficient cause or consideration." Cal. Civ. Code § 1550. "Mutual assent may be manifested by written or spoken words, or by conduct." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850, 89 Cal. Rptr. 2d 540, 551 (1999). Generally, "silence or inaction does not constitute acceptance of an offer." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017). "Courts must determine whether the outward manifestations of consent would lead a reasonable

person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Plaintiff argues there was no enforceable agreement because he did not assent to the Cardholder Agreement, the Cards are not lawful objects, and Defendants did not provide consideration. *See generally* Mot.[1] Defendants argue Plaintiff agreed to be bound by the Cardholder Agreement when he used the Card and there was consideration because Plaintiff received the convenience and security of having access to his funds through the Card. For the following reasons, the court finds there is not an enforceable agreement.

First, Plaintiff cannot be bound to terms and conditions of the Cardholder Agreement by merely accepting a card he did not request. Plaintiff was issued the Card upon his release from CVSP. Dkt. 55 ("Cain Decl.") ¶ 2. Plaintiff did not apply for or request the Card, and was not provided an alternative means to receive his gate money. *Id.* His only option was to accept the Debit Card he was provided. *Id.* The Terms and Conditions for the Card state that "[b]y accepting and/or using this Card, you agree to be bound by the terms and conditions contained in this Agreement." *Id.*, Ex B. § 1. The mere acceptance of a prepaid card that was not requested, however, "cannot constitute acceptance of a contract." *Brown v. Stored Value Cards, Inc.*, Case No. 21-36031, 2022 WL 17844168, at *2 (9th Cir. Dec. 22, 2022). Thus, a contract was not formed when Plaintiff accepted the Card upon his release from CVSP.

Second, Plaintiff's use of a Debit Card that he did not request, did not create an enforceable agreement. Unlike in the consumer credit context, Plaintiff's use of a debit card that he was provided as the only means of accessing his money does not demonstrate an outward manifestation of assent to the terms stated in the Cardholder

---

[1] Because the court finds the issue of mutual assent is dispositive, the court does not address Plaintiff's arguments that the Cards are not lawful objects and that Defendants did not provide consideration.

Agreement. *See Brown v. Stored Value Cards, Inc.*, No. 3:15-cv-01370-MO, 2021 WL 5984468, at *4 (D. Or. Dec. 6, 2021), *aff'd,* No. 21-36031, 2022 WL 17844168 (9th Cir. Dec. 22, 2022). Using the Card was the most expedient method for Plaintiff to access his money. *See Reichert*, 56 F.4th at 1231 (finding plaintiff did not assent to cardholder agreement when he used release card to withdraw his money via ATM). Further, according to the Cardholder Agreement, even if Plaintiff declined to use the Card, he would still have been bound by the terms and conditions. *See* Cain Decl., Ex. B, § 1.

Defendants cite *Reyes v. JPay, Inc.*, Case No. 2:18-cv-00315-R (MRWx), 2018 WL 10811497, (C.D. Cal. June 26, 2018), to argue that a court in this district has held that use of a prepaid release card by a formerly incarnated individual constituted acceptance of the cardholder agreement. Mot. Br. 16. *Reyes* is a district court case that was decided before the Ninth Circuit's rulings in *Brown*, 2022 WL 17844168, and *Reichert*, 56 F.4th at 1231, and no longer represents good law to the extent it conflicts with those Ninth Circuit decisions.[2]

Additionally, here, as in *Reichert*, 56 F.4th at 1229, Plaintiff "was presented with one option to retrieve his own money right away," through the pre-activated card, and faced having his money reduced by significant increments if he continued to retain, but not use, the Card. "Withdrawing the money presented a more immediate way to access the funds than any alternative presented in the fine print Agreement."

---

[2] *Reyes* is also distinguishable from the facts at hand. In *Reyes*, 2018 WL 10811497, at *1, the court found an enforceable agreement where the cardholder agreement stated that "*use* of [the] card constitute[d] acceptance." *Id.*; *see also Reichert v. Keefe Commissary Network LLC*, 542 F. Supp. 3d 1133, 1144 (W.D. Wash. 2021), *aff'd sub nom. Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220 (9th Cir. 2022) (acknowledging that the plaintiff in *Reyes* could have "avoid[ed] a contractual relationship by refraining from using the card while he attempted to cancel it."). Unlike in *Reyes*, here, the Cardholder Agreement that accompanies the Debit Card states: "By *accepting* and/or using this Card, you agree to be bound by the terms and conditions contained in this Agreement." Cain Decl., Ex. B, § 1 (emphasis added).

6

*Id.* "Under these circumstances, reasonable minds could not find that [Plaintiff] objectively manifested assent to the terms of the Agreement by using the Card to obtain his own money." *Id.*

Third, Plaintiff's ability to receive money back in full and at no cost does not render the Cardholder Agreement enforceable. According to Defendants, Plaintiff had the option of closing the account with the Card within seven (7) days after activation and receiving a paper check or withdrawing his money at certain ATMs without any fee. Mot. Br. at 5-6. But as the Ninth Circuit explained, Plaintiff was under no obligation to comply with the fine print terms of an agreement to which he did not assent to retrieve and use his own funds. *See Reichert*, 56 F.4th at 1229. Here, as in *Reichert*, Plaintiff was presented with one option to use and retrieve his money immediately. *See* Cain Decl. ¶ 10 (stating he used all but $4.87 of the funds by September 30, 2020, which was 12 days after his release); Dkt. 52-1, Ex. D at 1 (showing a $4.87 account balance as of September 30, 2020). Under these circumstances, reasonable minds could not find that Plaintiff objectively manifested assent to the terms of the agreement by using the Card to obtain his own money.[3] *See Reichert*, 56 F.4th at 1229; *Knutson*, 771 F.3d at 565. Defendants' argument, thus, fails.

---

[3] Defendants contend Plaintiff demonstrated assent when he "made several phone calls to the customer service line associated with the Card, voluntarily register[ed] a PIN for the Card, and check[ed] his balance." Mot. Br. at 6. Defendants further contend Plaintiff "logged onto the website associated with card services as recently as June 25, 2021…." *Id.* The evidence in the record establishes Plaintiff used all but $4.87 of the funds on the Card as of September 30, 2020—which was 12 days after his release on parole. Cain Decl. ¶¶ 10-11; Dkt. 52-1, Ex. D at 1. Moreover, Defendants' records indicate the account balance on the Card was reduced to $0 as of November 2020, due to incurred fees. Dkt. 52-1, Ex. D at 1. Even if the court were to accept Defendants' contention that Plaintiff made the latter attempts to use the Card, the court finds that any attempt by Plaintiff to view the balance of the Card or use the remainder of his own money would not constitute acceptance of the terms of the agreement, as no money remained in the account.

7

## **CONCLUSION**

For the foregoing reasons, the court DENIES Defendants' Motion to Compel Arbitration of All Claims (Dkt. 52).[4]

IT IS SO ORDERED.

Dated: March 1, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[4] Plaintiff's Request for Decision (Dkt. 87) is DENIED as moot.